UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Arrowhead Environmental Partners, LLC,   )  | |
| )  | Civil Action No. |
| Plaintiff   ) | |
| ) | |
| v.   ) | |
| ) | |
| CSX Transportation, Inc., Gideon Jenkins   ) | JURY TRIAL DEMANDED |
| Kurt Miles and Gary M. Gambill,   ) | |
| ) | |
| Defendants   ) | |
| ) | |

**COMPLAINT**

**INTRODUCTION**

Arrowhead Environmental Partners, LLC ("AEP") has been significantly harmed by CSX Transportation, Inc.'s ("CSX") contradictory decision to not move AEP's rail containers from a property and track CSX leased to AEP in May of 2022, after an extensive 9 month review of AEP's container system by numerous inside and outside parties. CSX knew all about AEP's container system since, at least, October of 2021 and CSX had signed off on AEP's container system.

AEP's containers are safe, prevent odor releases, and leachate discharges. AEP's containers have been used successfully on other Class 1 and affiliated railroads for three years. In fact, CSX's Director of Business Development even wrote a letter to the Massachusetts Department of Transportation supporting AEP's operation and committing to "service the operation" on June 9, 2022. CSX's sudden reversal of support of AEP's container system would seem to imply it is the result of undue pressure received from an AEP competitor in the waste-

by-rail space, because it is unreasonable to believe that such a high level of incompetence exists in a Class 1 railroad.

## PARTIES

1. The Plaintiff, Arrowhead Environmental Partners, LLC, is a Delaware limited liability company with its principal place of business at 65 Challenger Road, Suite 312, Ridgefield Park, New Jersey.

2. The Defendant, CSX Transportation, Inc., is a Virginia company with its principal place of business at 500 Water Street, Jacksonville, Florida.

3. Gideon Jenkins is an individual that resides at 3rd Avenue North, Jacksonville Beach, Florida.

4. Kurt Miles is an individual that resides at 800 Chesapeake Avenue, Baltimore, Maryland.

5. Gary M. Gambill is an individual that resides at 1617 Inkberry Lane, Saint Johns, Florida.

## JURISDICTION AND VENUE

6. Jurisdiction is proper in this Court pursuant to 28 U.S.C. section 1332 (diversity of citizenship) and the amount in controversy exceeds $75,000.

7. Venue is proper in this Court pursuant to 28 U.S.C. section 1391 because a substantial portion of the events giving rise to the Plaintiff's cause of action occurred in this judicial district and division.

## FACTS

8. AEP first reached out to CSX's sales and business development groups (Gideon Jenkins and Kurt Miles) in September of 2021 to see if it could lease some unused property and track within CSX's West Springfield, Massachusetts rail yard which AEP had identified

("CSX West Springfield Yard"). AEP operates a landfill in Uniontown, Alabama and is seeking to move municipal solid waste ("MSW") from central Massachusetts to its landfill in Alabama via CSX and the Norfolk Southern ("NS"). CSX would be the originating carrier, interchanging the traffic to the NS in Oak Island railyard in New Jersey. CSX knew, from day one of its negotiations with AEP in September, 2021, that AEP intended to use the CSX West Springfield Yard to move MSW from central Massachusetts to its landfill in Alabama via CSX and the NS.

9. CSX personnel claimed to be enthused about developing and capturing this new business from AEP. AEP and CSX thought this would be a good way for CSX to work together with the NS and, possibly, the PanAm Southern Railroad to take more trucks off of Massachusetts highways.

10. In September of 2021, AEP and CSX discussed CSXT Tariff 4048 which requires metal lids to be utilized in the shipment of MSW. After AEP explained to CSX that the bulk of AEP's container fleet does not use metal lids, CSX indicated that its Load Engineering and Design Services (LEADS) group would need to visit AEP's operation in New Jersey so the LEADS group could inspect AEP's containers along with AEP's unique container covering system. The double-stack DTTX well-cars, that AEP utilizes, have been operating in the industry for decades.

11. Indeed, on September 24, 2021, Kurt Miles specifically represented to AEP that CSX's LEADS group would visit AEP's Oak Island (New Jersey) facility to "take a look at the containers and loading as it pertains to the opportunity at West Springfield, MA."

12. Additionally, and in tandem, CSX operations explored various interchange locations with the NS and, ultimately, decided on Oak Island (New Jersey) as the appropriate location.

13. During its visit and inspection of AEP's operations in October of 2021, CSX's LEADS group spent the majority of its time inspecting the modified containers AEP was building and using in the movement of MSW. CSX's LEADS group took numerous pictures of AEP's containers and AEP shared its patent pending design modifications with CSX's LEADS' group. AEP utilizes American Bureau of Shipping ocean-going containers, modified to handle MSW.

14. Indeed, CSX's LEADS group visited AEP's facility twice in October. The second visit was attended by Kevin Conlon, the head of the LEADS group, who flew from Jacksonville, Florida to attend this visit. The meeting was also attended by two of Arrowhead partners and was extremely positive and complimentary. CSX's LEADS group commented that they thought AEP's containers were the most efficient means of transporting trash on rail, far better than some other options that may not be tariff compliant, but currently being utilized by CSX.

15. AEP is unaware of any negative comments from the CSX LEADS group as a result of their multiple inspections of AEP's operations in October of 2021.

16. Additionally, in the RD1 environment study application submitted to CSX on October 5, 2021, AEP outlined that the operations at the CSX West Springfield Yard would be identical to its existing operations performed in Conrail's Oak Island Railyard. The application stated that the activity, operations and processed proposed to be performed on CSX's property would be: "Transloading of 40' modified and closed wasted containers in West Springfield, MA exactly similar to the operation being performed today in the Conrail (CSX) Oak Island, NJ rail yard." CSX is one of two owners of Conrail. In October of 2021, Gideon Jenkins specifically represented to AEP that CSX's

"environmental team" was already involved in the review of AEP containers and operations and that CSX's environmental team would then make a recommendation to CSX. Kurt Miles also represented to CSX that the RD1 environmental study application had already been submitted to CSX's environmental group on October 6, 2021. Thus, both Gideon Jenkins and Kurt Miles assured AEP that CSX's environmental group was extensively involved, as early as the first week of October 2021, to inspect AEP's containers and review its operations so that the environmental group, early on, could make a recommendation to CSX so that AEP could begin operations at the CSX West Springfield Yard.

17. During lease negotiations and CSX's due diligence on AEP's operations, AEP made multiple offers to the two CSX sales representatives (Gideon Jenkins and Kurt Miles) to see AEP's Oak Island, NJ rail yard and the existing container modification and railcar loading operation. Neither of CSX's representatives ever came to AEP's operation to see it in action, even though the invitation was extended many times.

18. While CSX's operating and environmental personnel examined the AEP container system, AEP was negotiating rail rates with CSX and NS. After weeks of back-and-forth negotiations, a through rail rate (including CSX's factor) was quoted by the NS to AEP on January 11, 2022. CSX made a reduction in its transportation factor on January 31, 2011. AEP told the NS and CSX the final pricing was acceptable and to publish the rate. Thus, commercial terms had been agreed to regarding rail rates and AEP was waiting for CSX to finalize them (with the NS) into a formal transportation contract. AEP was told the rate could not be finalized until the property lease was signed for the CSX West Springfield Yard. As part of the exclusive requirement of the to-be-executed lease for AEP to ship on

CSX, there is no reason either party would have executed a 10-year land and track lease agreement without having first agreed upon mutually acceptable transportation rates.

19. On January 18, 2022, Kurt Miles provided a draft of the Lease to AEP and represented to AEP that "additional language will be added once the environmental assessment is completed." Therefore, Kurt Miles intentionally led AEP to believe that a final Lease would be executed once CSX's environmental assessment was completed.

20. CSX also required Arrowhead to hire an outside firm to conduct an environmental review of the proposed operation, which was successfully completed in April, 2022.

21. On May 9, 2022, Kurt Miles told AEP that he was "looking forward to next steps at West Springfield and growing [AEP's] business with CSX!" As of May 9, 2022, CSX informed AEP that the Lease was in final form and ready for electronic signatures. CSX's representation to AEP that the Lease was in final form also led AEP to believe, based on Kurt Miles' early representations, that (1) the environmental review was completed, (2) the environmental group made a positive recommendation to CSX regarding AEP and (3) AEP was cleared for operations at the CSX West Springfield Yard.

22. On May 10, 2022, after CSX completed its exhaustive review and studies—and rail rates were determined—Arrowhead and CSX entered into the Land Lease and Track Lease Supplement (Loading/Unloading) (collectively the "Lease"). Because Kurt Miles had represented to AEP in January of 2022 that the Lease would only be executed after the environmental review was completed, AEP believed that, as of May 10, 2022, the environmental review was completed. And, because Kurt Miles and Gideon Jenkins (as early as October of 2021) also represented to AEP that CSX's environmental group would be making a recommendation to CSX regarding AEP's containers and operations, AEP

believed that the execution of the Lease on May 10, 2022 was proof positive that CSX's environmental group blessed AEP's operations after its review in October of 2021.

23. Once the Lease was fully executed, AEP acted pursuant to its rights under the Lease to develop the CSX West Springfield Yard and conduct its business. Specifically, AEP has committed over $7.5 million in capital. In addition, AEP reached out to potential customers who have begun obtaining equipment and trucks necessary to utilize the CSX West Springfield Yard. These customers likely have closed off other transportation and disposal options that might have been available to them prior to committing to AEP.

24. CSX never led AEP to believe that AEP's containers or system of transporting MSW would not be acceptable to CSX.

25. AEP has already paid, and CSX accepted without reservation, the first year's rent pursuant to the Lease. Indeed, on June 9, 2022, CSX publicly acknowledged its support of the project in a letter to AEP for use in a potential grant application with the Massachusetts Department of Transportation ("DOT"). CSX's Head of Business Development, Gary Gambill, wrote a letter to the DOT supporting Arrowhead's proposed operation at the CSX West Springfield Yard stating, without reservation, that "CSX will service the operation." The Mass DOT requires that any support letter from a railroad include a statement that the "servicing railroad has participated in or has reviewed the project's design."

26. On June 22, 2022, Gideon Jenkins represented to AEP that CSX was "very excited about the new business starting up at West Springfield!"

27. Sometime in June, 2022, after, among other things, (1) the rail rates were agreed to, (2) the Lease was fully executed, (3) the first year's rent paid to CSX and (4) CSX's Head of

Business Development provided a letter to the DOT supporting AEP's at the CSX West Springfield Yard, an individual within CSX unilaterally decided that AEP's container model would not be compliant with CSXT Tariff 4048 that requires a "solid steel lid with locking mechanism." CSX's sudden, and completely unexpected, reversal was after numerous CSX personnel had already inspected AEP's containers and observed how AEP's containers are currently being shipped and handled (for almost three years) on another railroad (Conrail) that is ~50% owned by CSX, and Pan Am Southern which is also 50% owned by CSX.

28. At no point during its inspections of AEP's containers or negotiations of the rail rates or the Lease did CSX state that AEP's container fleet would not be allowed for the purpose which the rail rates had been agreed to and the Lease was signed (and first year's rent paid). AEP strongly believes, and will explore in discovery, that one of AEP's competitors has induced CSX to renege on its Lease and common-carrier commitment to ship AEP's containers. This customer was referred to in CSX's response to the Surface Transportation Board complaint AEP has filed.

29. If, indeed, CSX's purported reason is true and not the result of pressure from one of AEP's competitors, CSX has issued waivers to its tariffs in the past and could easily do so in AEP's case to allow for the shipment of its containers. While CSXT Tariff 4048 requires steel tops on containers of MSW, CSX has determined that biosolids in containers can move safely without steel tops and also allows for some to ship gondolas loaded with MSW without steel lids covered by Posi shell which is impossible to clean out completely, thereby creating a potential environmental nuisance. All shipments of these waste products go to Subtitle D landfills.

30. If CSX legitimately had an issue with AEP's container system, CSX should have informed AEP of that concern in the Fall of 2021 and CSX should not have signed the Lease in May, 2022.

31. As CSX has a near monopoly on rail transport of freight in most of New England and is the only railway serving the CSX West Springfield Yard, this late action has the effect of barring AEP from rail access in central Massachusetts.

32. If AEP is forced to walk away from its investment in the CSX West Springfield Yard it loses both the investment and the business opportunity, in all likelihood, to a competitor but most importantly it loses the credibility in the industry to be a viable option to move waste by rail in New England.

33. Until the CSX's U-turn on support of this project, AEP had made extensive capital investment in the CSX West Springfield Yard. AEP paid the first year's rent on the CSX West Springfield Yard. AEP fixed and upgraded the track onsite, procured and placed a down payment on a Taylor Reachstacker and procured and modified 600 containers. The combined costs of these procurements totals approximately $7.5 million.

34. In addition, AEP began approaching potential shippers of waste and some of those shippers procured truck chassis that would be used to shuttle containers to the CSX West Springfield Yard. Some shippers began informing truck-served landfills that they would not be utilizing them as they would be coming to the CSX West Springfield Yard. Since AEP has been prevented from shipping from the CSX West Springfield Yard since mid-July, AEP is not sure of the reputational and equipment costs these potential customers have incurred.

35. CSX knows that AEP's business plan was to ship three DTTX cars (holding a total of 30 containers) per day, with a goal of increasing the shipments to five cars (50 containers) per day. Each container holds approximately 25 tons, so at three cars per day, approximately 750 tons would be shipped per day. Over 280 days per year, that equates to 210,000 tons per year. Based on expected market rates, that means AEP is losing $15.8-$16.8 million dollars in annual revenues or $1.3-$1.4 million per month. Most publicly-traded waste companies produce operating profit ratios of approximately 20%-25%, meaning AEP is losing $3.2 - $4.2 million per year. Without taking into account inflation and changing disposal options in Massachusetts, AEP would lose between $32 - $42 million in profits over the ten-year term of the Lease.

## COUNT I
### (Breach of Contract)

36. AEP repeats and realleges the allegations set forth above.

37. AEP and CSX entered into the Lease.

38. AEP performed under the Lease.

39. CSX breached the Lease.

40. AEP suffered damages.

## COUNT II
### (Breach of Oral Contract)

41. AEP repeats and realleges the allegations set forth above.

42. As set forth above, AEP and CSX entered into an oral contract for the CSX West Springfield Yard.

43. CSX agreed to lease the land and tracks and ship AEP's containers.

44. AEP performed under the oral contract.

45. CSX breached the oral contract by refusing, among other things, to allow AEP to ship its containers from the CSX West Springfield Yard in accordance with the agreement reached between AEP and CSX.

46. AEP suffered damages.

## COUNT III
### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

47. AEP repeats and realleges the allegations set forth above.

48. Every contract, including the Lease, contains an implied covenant of good faith and fair dealing.

49. Through the actions set forth above, CSX breached the implied covenant of good faith and fair dealing contained in the Lease.

50. As a result of CSX's breach, AEP suffered damages.

## COUNT IV
### (Promissory Estoppel)

51. AEP repeats and realleges the allegations set forth above.

52. CSX made a clear and unambiguous promise to AEP relative to, among other things, the shipping of AEP's containers from the CSX West Springfield Yard.

53. CSX promised AEP that it could ship its containers from the CSX West Springfield Yard.

54. AEP reasonably and foreseeably relied on CSX's promise and, among other things, paid the first year's rent, made procurements of over $7.5 million dollars and made capital improvements to the CSX West Springfield Yard.

55. As a result, AEP suffered damages.

## COUNT V
### (Unjust Enrichment)

56. AEP repeats and realleges the allegations set forth above.

57. CSX was enriched at the expense of AEP. If another waste competitor comes in CSX is further enriched.

58. It is against equity and good conscience to permit CSX to retain the benefits of, among other things, the first year's rent and capital improvements that AEP made.

## COUNT VI
## (Fraud v. All Defendants)

59. AEP repeats and realleges the allegations set forth above.

60. CSX, Kurt Miles, Gideon Jenkins and Gary Gambill made misrepresentations or a material omission of fact which was false and known to be false.

61. In early October of 2021, Kurt Miles and Gideon Jenkins stated that, among other things, CSX's LEADS group was inspecting AEP's containers and operations and that CSX's environmental group was also studying AEP's operations and would make a recommendation to CSX. Kurt Miles and Gideon Jenkins represented to AEP that the Lease would be finalized once the environmental review was complete. The Lease was completed and executed on May 10, 2022. Thus, Kurt Miles and Gideon Jenkins led AEP to believe that the environmental review was completed, the recommendation of the environmental group was positive and AEP would begin operations at the CSX West Springfield Yard. On June 22, 2022, Gideon Jenkins even represented to AEP that CSX was "very excited about the new business starting up at West Springfield!"

62. CSX's Head of Business Development, Gary Gambill, wrote a letter to the Massachusetts DOT supporting Arrowhead's proposed operation at the CSX West Springfield Yard stating, without reservation, that "CSX will service the operation." The Mass DOT requires that any support letter from a railroad include a statement that the "servicing railroad has participated in or has reviewed the project's design."

63. CSX made a misrepresentation of fact that, among other things, AEP would be allowed to ship, using AEP's containers that CSX's LEADS group inspected in October of 2021, from the CSX West Springfield Yard.

64. CSX's, Kurt Miles', Gideon Jenkins' and Gary Gambill's statements were false and known to be false by them.

65. CSX's, Kurt Miles', Gideon Jenkins' and Gary Gambill's representations were made for the purpose of inducing AEP to rely upon it so that AEP would, at the very least, pay the first year's rent and make capital improvements to the CSX West Springfield Yard.

66. AEP justifiably did so rely on the representations.

67. AEP was injured as it has expended millions of dollars in capital improvements, made numerous promises to potential customers and cannot ship from the CSX West Springfield Yard and will lose all of the profits associated with those shipments over the 10-year term of the Lease.

68. Alternatively, CSX's, Gideon Jenkins', Kurt Miles' and Gary Gambill's failure to disclose that CSX would not allow AEP to ship using its containers, even after the two inspections, negotiation of rail rates, signing of the Lease and millions of dollars in expenditures by AEP constitutes material omissions.  CSX, Gideon Jenkins, Kurt Miles and Gary Gambill materially omitted in their communications with AEP the fact that CSX would not allow AEP to ship from the CSX West Springfield Yard using AEP's current container system. CSX, Gideon Jenkins, Kurt Miles and Gary Gambill either knew that CSX would not allow AEP to ship using its containers and concealed this from AEP or colluded with another competitor of AEP's to change CSX's decision after the vetting process was over and the Lease had been executed.  AEP could not have known this information because it

is not public and CSX, Gideon Jenkins, Kurt Miles and Gary Gambill did not disclose it. At all times, CSX, Gideon Jenkins, Kurt Miles and Gary Gambill knew that AEP was operating – and expending significant funds and making commitments to customers - under the belief that it would be allowed to ship from the CSX West Springfield Yard using AEP's current container system. Despite AEP's agreeing to rail rates, signing the lease, making capital improvements and commitments to potential customers, CSX, Kurt Miles, Gideon Jenkins and Gary Gambill never disclosed that CSX intended to not allow AEP to ship from the CSX West Springfield Yard using AEP's current container system. AEP justifiably relied on its understanding that it would be allowed to ship from the CSX West Springfield Yard using AEP's current container system. CSX, Gideon Jenkins, Kurt Miles and Gary Gambill waited until AEP had agreed to rail rates, signed the Lease, expended millions of dollars in capital improvements and made commitments to potential customers before it revealed it would not allow AEP to ship from the CSX West Springfield Yard using AEP's current container system. As a result, AEP was injured. Gideon Jenkins and Kurt Miles were the main liaisons within CSX, and aware of all of the review being done internally. If anyone within CSX knew they were not going to support AEP's container system it would have been them.

## COUNT VII
### (Negligent Misrepresentation v. All Defendants)

69. AEP repeats and realleges the allegations set forth above.

70. As set forth above, CSX, Gideon Jenkins, Kurt Miles and Gary Gambill made misrepresentations of material fact.

71. CSX's, Gideon Jenkins', Kurt Miles' and Gary Gambill's misrepresentations were made under circumstances in which CSX, Gideon Jenkins, Kurt Miles and Gary Gambill ought to have known their falsity.

72. CSX's, Gideon Jenkins', Kurt Miles' and Gary Gambill's misrepresentations were made with the intent to induce AEP to act on them.

73. AEP justifiably relied on CSX's misrepresentations.

74. AEP suffered damages.

## COUNT VIII
### (Violation of G.L. c.93A, section 11)

75. AEP repeats and realleges the allegations set forth above.

76. AEP has suffered a loss of money or property as a result of CSX's actions described above.

77. AEP's loss is a result of unfair or deceptive acts or practices of CSX

78. CSX and AEP are engaged in the conduct of trade or commerce.

79. CSX's conduct, as set forth above, is in disregard of known contractual arrangements with AEP and intended to secure benefits for CSX.

80. CSX's actions were done knowingly and willfully.

## PRAYER FOR RELIEF

The Plaintiff prays that this Honorable Court enter judgment against CSX on Counts I through VIII of the Complaint, treble the damages under Count VIII and award attorney's fees, and grant such other and further relief as this Court deems just.

## DEMAND FOR JURY TRIAL

The Plaintiff hereby demands a jury trial on all issues so triable.

        Arrowhead Environmental Partners, LLC,,

        By its attorneys

        /S/  Ronald W. Dunbar, Jr.

        Ronald W. Dunbar, Jr.
        DUNBAR LAW P.C.
        10 Post Office Square
        Boston, MA 02109
        Tel: (617) 244-3550
        Email: dunbar@dunbarlawpc.com

Dated:  October 24, 2022